**Emmett C. NAVE, Petitioner–Appellee,**

v.

**Paul K. DELO, Respondent–Appellant.**

**Emmett C. NAVE, Petitioner–Appellee,**

v.

**Paul K. DELO, Respondent–Appellant.**

**Emmett C. NAVE, Petitioner–Appellant,**

v.

**Paul K. DELO, Respondent–Appellee.**

**Nos. 93–2735, 93–2898 and 93–3073.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 14, 1994.

Decided Aug. 7, 1995.

Millie E. Aulbur, Jefferson City, MO, argued, for appellant.

Allen Harris, St. Louis, MO, argued, for appellee.

Before BOWMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

On February 21, 1995, the United States Supreme Court vacated our previous decision in this case (reported at 22 F.3d 802) and remanded for reconsideration in light of

*Schlup v. Delo,* —— U.S. ——, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). On reconsideration, we again reverse.

In our previous decision, we reversed the district court's decision granting Nave's petition for a writ of habeas corpus based on ineffectiveness of trial counsel and affirmed its decision denying Nave's request for relief based on additional alleged trial errors. Although the Supreme Court's order vacated our prior opinion as it related to all of these issues, it remanded for reconsideration in light of *Schlup v. Delo.* Therefore, we revisit only Part II(A)(1)(b). With regard to the other issues, our decisions are the same as they were earlier. Specifically, we hold that Nave has failed to meet the actual innocence standard outlined in *Schlup v. Delo* and only restate our prior holdings under the other sections.

## I. BACKGROUND

Rather than reformulate the facts of this case, we set forth below the background substantially as it was explicated in our prior opinion. We summarize the facts outlined in the Missouri Supreme Court's opinion affirming Nave's conviction on direct appeal. *State v. Nave,* 694 S.W.2d 729, 731–33 (Mo.1985) (en banc), *cert. denied,* 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 901 (1986).

In June of 1984, Nave was convicted of one count of capital murder, one count of first degree robbery, three counts of sodomy and four counts of kidnapping. The convictions stemmed from a crime spree that took place on November 19, 1983, while he was on parole from two life sentences for armed robbery and forcible rape. Nave had been experiencing difficulties with his parole officer because of his failure to stop consuming alcoholic beverages and attend Alcoholics Anonymous meetings, both of which were conditions of his parole. Additionally, Nave was upset about the instructions he received from the drug abuse counselor at a nearby hospital. Nave was also having problems getting along with Geneva Roling, a neighbor who

was either the owner or manager of the apartment house in which Nave and his wife lived.

On the night of November 18, Nave told his wife that Roling and the drug abuse counselor were trying to control his life and expressed a fear that his parole would be revoked. He also indicated that he was going to "hurt" some people, including Roling.

The next morning, Nave picked up his .22 caliber semiautomatic rifle and ordered his wife to drive him to the hospital so he could get some drugs. Before leaving, Nave told his wife that he had to talk to Roling. While his wife went to the car, Nave knocked on Roling's door. From the parking lot, Nave's wife heard a number of shots, followed by Roling's screams. Roling's body was later discovered by her son; she had been shot ten times, with the fatal bullet having been fired into her skull at point-blank range. Ballistics tests would later prove that the bullets came from Nave's rifle.

Nave and his wife drove to the hospital; upon arriving, Nave went to the emergency room and demanded some painkilling drugs. His requests were denied, at which time he returned to the car and told his wife the drug counselor had prevented him from obtaining drugs. Armed with his rifle, Nave returned to the hospital and searched for his drug counselor. Nave found her talking to a nurse. He pointed the gun at the women and demanded a shot of Demerol. He told them that he had already killed two people [1] and had nothing left to lose. After receiving an injection, he ordered the women to place the contents of the narcotics cabinet in a bag [2] and accompany him to the car. As the trio left the hospital, they encountered two more female hospital employees. Nave threatened to kill them if they did not also accompany him to his car. Faced with this threat, they also accompanied Nave.

Nave ordered the women into his car; after questioning the hostages, Nave directed his wife to drive to one of the hostage's homes.[3] During the trip, Nave repeated his

---

1. Despite this statement, there is no indication that Nave killed anyone other than Roling.

2. The theft of the narcotics formed the basis for the robbery charge.

3. These abductions formed the basis for the kid-

earlier statement that he had already killed two people and had nothing to lose by killing more people. Once Nave, his wife, and his hostages got into the house, Nave ordered the hostages to remove their clothes and perform various sex acts with him, his wife, and each other. Nave was eventually captured after the drug counselor injected him with a sufficiently large dose of Demerol to cause him to pass out.

Nave was represented at trial by a member of the Cole County Public Defender's Office. Nave's defense was diminished capacity due to drug and alcohol use, which was supported by testimony from his wife and a psychiatrist. The state presented evidence that tended to prove that, at the time of the crimes, "Nave was not intoxicated, was alert, and spoke clearly." *Nave*, 694 S.W.2d at 733. In addition to the hostages' testimony, the state also demonstrated that Nave's rifle was the weapon used to kill Roling. The jury convicted Nave on all counts. After the penalty phase of the trial, the jury recommended that Nave be sentenced to death for murdering Geneva Roling. The trial court sentenced him to death for the capital murder, to life imprisonment for the robbery, to life imprisonment without the possibility of parole for thirty years on each sodomy charge and to thirty years' imprisonment on each kidnapping charge.

As indicated above, Nave's convictions and sentences were affirmed on direct appeal. During the direct appeal, Nave was represented by the Boone County Public Defender's Office.

In May 1986, Nave filed a pro se motion for relief under Missouri Supreme Court Rule 27.26, seeking to set aside his conviction for capital murder and the sentence of death. The St. Charles County Public Defender's Office was appointed to represent Nave. After an evidentiary hearing was held, relief in these collateral proceedings was denied, and the denial of relief was affirmed. *Nave v. State*, 757 S.W.2d 249 (Mo.Ct.App.1988), *cert.*

*denied*, 489 U.S. 1059, 109 S.Ct. 1330, 103 L.Ed.2d 598 (1989).

In March of 1989, Nave commenced this habeas proceeding in federal district court. At some time between the filing of the second amended petition and the district court's ruling on that petition,[4] Nave filed Motions to Recall the Mandate in both the Missouri Supreme Court and the Missouri Court of Appeals. Both motions were summarily denied.

The district court granted habeas relief for the following ten alleged instances of ineffective assistance of counsel:

1) Failure to request a severance of the counts;

2) Failure to secure or present evidence of Nave's long history of substance and alcohol abuse and his lack of intent to commit the crimes with which he was charged;

3) Failure to perform an adequate *voir dire;*

4) Failure to advise Nave that, under the then-existing Missouri marital privilege, he could bar his wife from testifying against him;

5) Failure to present evidence of Nave's prior substance and alcohol abuse at the penalty phase of the trial;

6) Failure to object to evidence about the impact of Nave's crimes on the victims;

7) Failure to object to the prosecutor's comments regarding the possibility of parole;

8) Failure to interview or prepare one of the defense witnesses before calling him to the stand to testify;

9) Failure to present an adequate closing argument at the end of the penalty phase; and

10) The cumulative effect of all the above-mentioned errors.

napping charges.

4. The record contains copies of the motions, but they are not dated. The record also contains copies of the orders from both courts, which indicated the Missouri Supreme Court denied the

motion on July 21, 1992, and the Missouri Court of Appeals denied the motion on July 14, 1992. From this, we conclude motions were filed in both courts and that they were filed within the time frame described in our opinion.

In granting the writ, the court noted the state's argument that it was procedurally barred from reviewing many of these claims because they had not been presented to the state courts, but concluded the procedural bar could be lifted because Nave's claims were contained in his motions to recall the mandate and because Nave was actually innocent of the death penalty. The court also found, despite the lack of evidence in the record, that the Missouri Public Defender System is understaffed and undertrained. The court's order concluded by requiring the state "to discharge the defendant on the capital murder charge, or alternatively, to amend his sentence in such a manner as to eliminate the death penalty, or to grant him a new trial on the capital murder charge only." *Nave v. Delo*, No. 89–0447–C(4), slip op. at 14 (E.D.Mo. June 17, 1993).

Nave then requested that the district court alter or amend its judgment so as to address his remaining grounds for relief and to clarify the ambiguous remedy prescribed in the court's earlier order. As to the former, the court rejected the remaining claims of error. As to the latter, the court concluded that "[t]he state of Missouri may impose a sentence of 50 years or more or, in the alternative, grant the petitioner a new trial of the punishment phase of the murder case." *Nave v. Delo*, No. 89–447–C(4), slip op. at 4 (E.D.Mo. July 9, 1993). The state appealed the court's decision to grant the writ, and Nave appeals the court's rejection of the additional grounds offered in support of the writ. Nave cross-appealed the court's decision denying him relief based on two additional allegations of trial error. We reversed the district court's decision to grant the writ and affirm the decision with respect to the issues raised in Nave's cross-appeal. Following the subsequent vacation and remand of that opinion, we again reverse the decision of the district court's decision to grant the writ and affirm its decision regarding the issues presented in Nave's cross-appeal.

## II. DISCUSSION

### A. Ineffective Assistance of Counsel

Our discussion of the ten alleged instances of ineffective assistance of counsel will be facilitated by dividing the claims into two categories: those that are procedurally barred and those that are not. The state concedes that three of Nave's claims were not procedurally defaulted.[5] Our review of the record reveals that, at the 27.26 hearing, Nave alleged his trial attorney failed to adequately develop his defense of diminished capacity due to alcohol abuse, but this issue was not raised in the appeal from the 27.26 hearing and thus was defaulted. *See Gilmore v. Armontrout*, 861 F.2d 1061, 1065 (8th Cir.1988) (failure to raise claim in appeal from 27.26 hearing constitutes procedural default), *cert. denied*, 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1037 (1989). The six remaining instances of attorney error were not presented to the state courts in either the direct appeal or the collateral proceedings, and accordingly have been defaulted. *E.g., Smith v. Groose*, 998 F.2d 1439, 1441 (8th Cir.1993) ("The failure to satisfy state procedural requirements serves as an adequate and independent state procedural bar to review."). We must examine whether these seven defaulted claims are subject to the procedural bar and, if so, whether there are any exceptions to the bar that would permit us to review the claims.

### 1. The Defaulted Claims

■ "Unless a habeas petitioner shows cause and prejudice, a court may not reach the merits of ... procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims." *Sawyer v. Whitley*, 505 U.S. 333, 337–39, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992) (citations and emphasis omitted). Additionally, a prisoner who cannot meet the cause and prejudice standard can obtain review if the petitioner can demonstrate he "has a colorable claim of factual

---

5. These claims are failure to move for a severance, failure to object to the references to the possibility of parole, and failure to prepare a defense witness. (Grounds one, seven, and eight).

innocence." *Id.* at 337–40, 112 S.Ct. at 2518–19.

Nave first contends that these seven claims are not defaulted because the substance of these claims was raised in his motions to recall the mandate. He further argues that, even if the claims were defaulted, the procedural bar can be lifted because he is actually innocent of the death penalty. Finally, he claims that he has demonstrated cause and prejudice sufficient to excuse his default. Specifically, he contends the default can be excused because his post-conviction counsel was operating under a conflict of interest and otherwise provided constitutionally deficient representation. We reject Nave's arguments.

### a. Motion to Recall the Mandate

Nave first contends his claims are not defaulted because they were raised in his motions to recall the mandate filed with the Missouri Supreme Court and the Missouri Court of Appeals. We reject his argument because a motion to recall the mandate was an inappropriate procedure for presenting the claims at issue.

In discussing the types of claims that may be raised in a motion to recall the mandate under Missouri law, we do not write on a clean slate. In *Kennedy v. Delo*, 959 F.2d 112 (8th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 168, 121 L.Ed.2d 116 (1992), the petitioner alleged that the state trial court "erred in failing to instruct the jury that first degree murder is a lesser included offense of capital murder." *Id.* at 115. The petitioner failed to raise this issue on direct appeal, but alleged he had not defaulted the claim because he raised it in a motion to recall the mandate. We rejected this argument because we were not convinced that the claim was "one of the exceptional cases which the Missouri Court of Appeals would have considered outside of the usual procedure for post-conviction review." *Id.* at 116. We take this opportunity to further clarify when the filing of a motion to recall the mandate in Missouri will preserve an issue for consideration in a subsequent habeas proceeding.

Under Missouri law, a motion to recall the mandate is permissible in only two circumstances. The first circumstance is when the petitioner alleges ineffective assistance of appellate counsel. Motions under Rule 27.26 allow trial courts in Missouri "to set aside a judgment of conviction for infirmities arising from trial proceedings only," so the appropriate avenue for alleging constitutional infirmities during the direct appeal is the filing of a motion to recall the mandate. *Hemphill v. State*, 566 S.W.2d 200, 208 (Mo. 1978) (en banc).[6] Conversely, a motion to recall the mandate cannot be used to allege ineffective assistance of trial counsel. *See State v. Zweifel*, 615 S.W.2d 470, 473 (Mo.Ct. App.1981) (court reached issue of ineffectiveness of appellate counsel, but refusing to "reach those points raised by defendant which deal with ineffectiveness of counsel during trial . . . .").

Nave relies on *Simpson v. Camper*, 927 F.2d 392 (8th Cir.1991), to argue that he could raise his claims of ineffective assistance of trial counsel in the motions to recall the mandate. His reliance is misplaced because, in *Simpson*, the petitioner claimed ineffective assistance of counsel on direct appeal. *Id.* at 393. At the state's urging, we held the case in abeyance to allow the petitioner to exhaust her state remedies by filing a motion to recall the mandate, which was granted by the Missouri Court of Appeals. *State v. Simpson*, 836 S.W.2d 75 (Mo.Ct.App.1992). None of the issues raised by Nave in the motions to recall the mandate (or, for that matter, in this habeas proceeding) involve claims of ineffective assistance of appellate counsel, so this use of the motion is inapplicable in this case.

The second instance in which a motion to recall the mandate may be filed is "when the decision of a lower appellate court directly conflicts with a decision of the United States Supreme Court upholding the rights of the accused." *State v. Thompson*, 659 S.W.2d 766, 769 (Mo.1983) (en banc). Nave reads this description broadly to encompass any

---

6. Rule 27.26 was repealed effective January 1, 1988, and defendants found guilty after a trial must pursue post-conviction proceedings under Rule 29.15. Notwithstanding this change, we believe a motion to recall the mandate is still a viable avenue to raise ineffectiveness of appellate counsel because, like its predecessor, Rule 29.15 may only be used to allege trial errors.

claim that an appellate court's decision conflicts with a Supreme Court decision interpreting constitutional rights. We do not read *Thompson*'s language so broadly for two reasons. First, to do so would be contrary to common sense: Nave's interpretation would create a never-ending opportunity to file what amounts to a motion for rehearing, which directly contravenes the time limits for filing such motions. *See* Mo.R.Civ.P. 84.17. Second, *Thompson*'s language is not so far-reaching that it extends to *any* claim of constitutional error; rather, it applies when an appellate court's opinion "*directly conflicts* with a decision of the United States Supreme Court upholding the rights of the accused." *Thompson,* 659 S.W.2d at 769 (emphasis added). The movant must be able to allege that the state court reached a result contrary to a subsequent decision from a higher tribunal; it is not enough that the movant merely allege the state court's decision misinterpreted or misapplied existing case law. We arrive at this understanding by examining the cases *Thompson* relied on: *State v. McReynolds,* 581 S.W.2d 465 (Mo.Ct. App.1979) and *State v. Nevels,* 581 S.W.2d 138 (Mo.Ct.App.1979).

In those cases, the Missouri Court of Appeals relied on a Missouri Supreme Court opinion, *State v. Duren,* 556 S.W.2d 11 (Mo. 1977) (en banc), to reject challenges to Missouri's constitutional provisions allowing women to opt not to sit on juries. The United States Supreme Court reversed the Missouri Supreme Court, *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), and later decreed that its holding would be applied retroactively to the date *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), was decided (which was January 21, 1975). *Lee v. Missouri,* 439 U.S. 461, 462, 99 S.Ct. 710, 711, 58 L.Ed.2d 736 (1979) (per curiam). The Missouri Court of Appeals recognized that its decisions in *McReynolds* and *Nevels* could not stand in light of the Supreme Court's decisions in *Duren* and *Lee,* and therefore recalled the mandate in both cases. *McReynolds,* 581 S.W.2d at 466; *Nevels,* 581 S.W.2d at 139.

The import of these cases is clear: a motion to recall the mandate is not a means by which a movant can allege *any* sort of error in an appellate court's opinion. Rather, *Thompson* was describing a narrow circumstance in which an appellate court's decision is contradicted by subsequent developments in the law that would be applicable in the movant's case. Inasmuch as Nave has failed to allege the sort of direct conflict contemplated by *Thompson,* his motions to recall the mandate were not the proper methods for presenting his claims to the Missouri Courts.

### b. Actual Innocence

■ Nave makes two separate claims under the heading of actual innocence: one that he is factually innocent of the underlying crime, and the other that he is innocent of eligibility for the death penalty. A habeas petitioner who has been sentenced to death may avoid a procedural bar to the consideration of the merits of his constitutional claims under the actual innocence exception by showing that it is more likely than not that no reasonable juror would have convicted him. *Schlup v. Delo,* —— U.S. ——, ——, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995) (adopting the *Murray v. Carrier* standard, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649–50, 91 L.Ed.2d 397 (1986)). The *Sawyer v. Whitley* standard remains the benchmark for actual innocence claims involving eligibility for the death penalty. *Id.* at —— n. 44, 115 S.Ct. at 867 n. 44. Under the *Sawyer* standard, Nave must show by clear and convincing evidence that but for the constitutional error, no reasonable juror would have found him eligible for the death penalty under Missouri law. 505 U.S. at 350, 112 S.Ct. at 2525.

■ Both the *Carrier* and the *Sawyer* actual innocence standards must be applied "in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Schlup,* —— U.S. at ——, 115 S.Ct. at 867 (quotation omitted). Unlike the *Jackson v. Virginia* standard governing the review of claims of insufficiency of

the evidence, 443 U.S. 307, 324; 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560 (1979), the actual innocence determination requires the reviewing court both to assess the credibility of the newly-discovered evidence and to make a "probabilistic inquiry" as to what the trier of fact, based on the totality of the evidence, would have done. *Schlup* at ——––——, 115 S.Ct. at 868–69.

■ As a preliminary matter, we reject Nave's contention that *Schlup* requires us to remand this case to the district court for a determination of Nave's actual innocence. The district court has already conducted a full evidentiary hearing on this matter in which Nave presented the newly-discovered medical and psychiatric records upon which he bases his actual innocence claim. The decision of the Supreme Court to remand *Schlup* to the district court was based on the "fact-intensive nature" of that inquiry and "the District Court's ability to take testimony from a few key witnesses." —— U.S. at ——, 115 S.Ct. at 869. Because the record regarding Nave's newly-discovered evidence has already been fully developed, this Court is fully capable of applying the *Carrier* standard to evaluate Nave's actual innocence claim without remanding this issue to the district court.

■ Only one of Nave's alleged errors—failure of counsel to present adequate evidence of his lack of intent due to alcohol and substance use—bears on his factual innocence of the crime. However, he has failed to persuade us that it is more likely than not that no reasonable juror would have convicted him, particularly in light of the fact that Nave's trial counsel did present evidence that Nave was intoxicated at the time of the murder. To the contrary, there is abundant evidence that Nave possessed the requisite criminal intent at the time of the murder. That evidence consists of the testimony of his victims (including a licensed practical nurse in the detoxification unit of Still Regional Hospital as well as a certified abuse counselor, both of whom were well-acquainted with the effects and indications of intoxication) and the deliberateness of Nave's conduct prior to the murder (threatening the victim's life the night before proceeding to her home with a loaded semi-automatic rifle). Based

on the totality of the evidence, we conclude that the jury would probably have convicted Nave of capital murder even if trial counsel had introduced evidence that Nave's past criminal acts occurred while he was using alcohol.

■ The errors Nave alleges also do not bear on his contention that the jury would not have sentenced him to death. Nave can succeed on this claim only "by showing no aggravating circumstance existed, or by showing some other condition of eligibility was not met. *Additional mitigating evidence does not satisfy the standard.*" *Shaw v. Delo*, 971 F.2d 181, 186 (8th Cir.1992) (emphasis added) (citing *Sawyer*, 505 U.S. at 344–45, 112 S.Ct. at 2522), *cert. denied*, —— U.S. ——, 113 S.Ct. 1301, 122 L.Ed.2d 690 (1993). In sentencing Nave to death, the jury found one aggravating circumstance: that he had a substantial history of serious assaultive convictions. *See State v. Nave*, 694 S.W.2d at 738; Mo.Rev.Stat. § 565.012.2(1) (1978). None of the errors Nave alleges were made by his attorney bear on the existence of this aggravating factor or on any other condition of eligibility for the death penalty. As in *Shaw*, Nave's "contentions do not affect his eligibility for the death penalty because they relate to mitigating rather than aggravating factors." 971 F.2d at 187. Even without the deficiencies Nave complains of, a reasonable jury could have still found the aggravating factor that made Nave eligible for the death penalty. *Cf. id.* Accordingly, we cannot excuse the procedural default by finding that Nave was actually innocent of any of the aggravating factors that motivated this jury to sentence him to death.

### c. Ineffectiveness of Post–Conviction Counsel

■ In *Coleman v. Thompson*, the Supreme Court held that because there was no constitutional right to the assistance of counsel in state post-conviction proceedings, "a petitioner cannot claim constitutionally ineffective assistance of council in such proceedings." 501 U.S. 722, 752, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991). Accordingly, ineffective assistance of post-conviction coun-

sel cannot be imputed to the state and cannot constitute the cause and prejudice necessary to excuse a procedural default. *Id.* at 751–55, 111 S.Ct. at 2566–67.

 Nave argues that *Coleman* should not apply in a situation where, as is the case here, the state post-conviction proceeding represented the first opportunity to raise his ineffective assistance of trial counsel claims. He correctly points out that *Coleman* specifically declined to address such a situation. However, in light of *Coleman,* this court has held that even if the state post-conviction proceeding represents the first opportunity to raise a claim, "counsel's failure to do so may not excuse the procedural default." *Nolan v. Armontrout,* 973 F.2d 615, 617 (8th Cir.1992) (citing cases). Accordingly, assuming Nave's post-conviction counsel was ineffective in a constitutional sense, his deficiency cannot serve as cause and prejudice sufficient to lift the procedural bar.

### d. Conflict of Interest

Nave contends his post-conviction counsel had a conflict of interest that prevented him from investigating and raising all available claims of ineffective assistance of counsel. The conflict arose from the fact that his post-conviction counsel was a member of the St. Charles County Public Defender's Office and his trial counsel was a member of the Cole County Public Defender's office, and both offices are part of the Missouri Public Defender System established pursuant to Chapter 600 of the Revised Missouri Statutes.

 Nave correctly argues that an actual conflict of interest may constitute the cause and prejudice necessary to excuse a procedural default. *E.g., Jennings v. Purkett,* 7 F.3d 779, 782 (8th Cir.1993); *Jamison v. Lockhart,* 975 F.2d 1377, 1380 (8th Cir. 1992). However, he has failed to convince us that an actual conflict of interest exists under the circumstances present in this case. "In order to prevail, [Nave] must show that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Salam v. Lockhart,* 874 F.2d 525, 527 (8th Cir.) (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980)), *cert. denied,* 493 U.S. 898, 110 S.Ct. 252, 107 L.Ed.2d 202 (1989). "[O]nce the defendant demonstrates the existence of an actual conflict, he must also show that the conflict had an adverse effect on his attorney's performance." *Id.* at 528. Neither a possible conflict, *Cuyler,* 446 U.S. at 350, 100 S.Ct. at 1719, nor the appearance of impropriety, *Pool v. Armontrout,* 852 F.2d 372, 375 (8th Cir.1988), *cert. denied,* 489 U.S. 1023, 1033, 109 S.Ct. 1149, 1172, 103 L.Ed.2d 208, 230 (1989), are sufficient to demonstrate the existence of an actual conflict; the claimant must show "that his counsel actively represented conflicting interests." *Cuyler,* 446 U.S. at 350, 100 S.Ct. at 1719.

In *Salam,* the habeas petitioner was represented by the same public defender's office that represented an initial suspect in the same crimes for which Salam was convicted. Even though his attorney had no personal involvement in the prior representation, Salam alleged that the office's prior representation of a suspect in the very same crime constituted a conflict of interest. We assumed that "representation by one attorney in the public defender's office may be imputed to all attorneys in the office," and went on to hold that there was no actual conflict of interest. *Salam,* 874 F.2d at 528. Consequently, even if Nave is correct in arguing that the Cole County Public Defender's representation at trial must be imputed to the St. Charles County Public Defender's Office (an issue that, as in *Salam,* we do not decide here), he is incorrect in arguing that there is automatically an actual conflict of interest. It is also important to note that in *Salam,* the two public defenders involved in the alleged conflict came from the same office; in the case at bar, the two public defenders came from different offices. Though the offices are under the central control of the Public Defender Commission, they are still different offices, and the fact that a member of one office must claim that a member of another office provided ineffective assistance of counsel does not present a direct conflict of interest. *See State ex rel. Public Defender Comm'n v. Bonacker,* 706 S.W.2d 449, 451 (Mo.1986) (en banc) (recognizing distinct nature of public defender's office); *People v.*

*Banks,* 121 Ill.2d 36, 117 Ill.Dec. 266, 268–69, 520 N.E.2d 617, 619–20 (1987) (same).

We do not rule out the possibility that, in a given case, additional facts might demonstrate the existence of an actual conflict of interest. However, Nave has presented no facts to support his claim; instead, he has relied solely on the statutorily created relationship between the public defender's offices in Missouri. This relationship, standing alone, is insufficient to demonstrate that an actual conflict of interest existed.

In conclusion, we hold that the seven claims under discussion were defaulted because the motions to recall the mandate were not a proper procedure for presenting them to the state courts. We also hold that Nave has not demonstrated the existence of cause and prejudice or an actual conflict of interest, nor has he demonstrated that, but for the alleged errors, he probably would not have been sentenced to the death. penalty. Accordingly, there is no basis for excusing the procedural default, and we refuse to consider these seven claims.

### 2. The Non–Defaulted Claims

 The three non-defaulted claims of ineffective assistance of counsel are to be examined under the familiar standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This standard requires Nave to show that his "trial counsel's performance was so deficient as to fall below an objective standard . of reasonable competence, and that the deficient performance prejudiced his defense." *Lawrence v. Armontrout,* 961 F.2d 113, 115 (8th Cir.1992). Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066, while at the same time refraining from engaging in hindsight or second-guessing of trial coun-

sel's strategic decisions. *Id.* at 689, 104 S.Ct. at 2065. Assuming the performance was deficient, the prejudice prong "requires proof 'that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lawrence,* 961 F.2d at 115 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068).

### a. Failure to Sever/Spousal Testimony

 Nave contends his counsel provided ineffective assistance when he declined the trial court's offer to sever the capital murder count from the counts involving the other crimes. Had the capital murder count been tried separately, Nave could have barred his wife from testifying under the then-existing statute governing spousal immunity. Mo. Rev.Stat. 546.260 (1978); *State v. Manning,* 657 S.W.2d 301, 302 (Mo.Ct.App.1983).[7] Arguably, his wife was a victim of the kidnapping, so failing to sever these counts destroyed Nave's right to bar her testimony. Nave concedes his wife was called to support his theory of defense, but alleges this decision also demonstrates his attorney's ineffectiveness because the effect of this decision was to provide the state the ability to present the only direct evidence of premeditation,[8] which was necessary to prove capital murder. *See* Mo.Rev.Stat. § 565.001 (1978).

For the sake of argument, we will accept as true Nave's claim that, had the crimes been tried separately, Sherry Nave could have been prevented from testifying at the capital murder trial. However, it is important to note that Nave's counsel called Sherry Nave as a witness in her husband's defense. It is conceded that trial counsel's strategy was to present the defense of diminished capacity; to do this, it was necessary to present evidence that Nave had been drinking and was intoxicated when he committed the crimes. The only sources of evidence that Nave was intoxicated at the time the

---

7. The statute has since been amended, and now makes clear that the privilege lies with the testifying spouse and not the defendant. Mo.Rev. Stat. § 546.260 (1986).

8. Nave's suggestion that his wife's testimony was the *only* evidence of premeditation is incorrect because "deliberation may be inferred and established circumstantially or, as sometimes put, 'from the circumstances of the homicide.'" *State v. Davis,* 472 S.W.2d 389, 390 (Mo.1971).

crimes were committed were Nave himself and Nave's wife.[9] Faced with these alternatives, it was reasonable for counsel to call Nave's wife to testify in support of the defense theory. Furthermore, as noted by the Missouri Court of Appeals, "[t]he more bizarre and out of control [Nave] was at the time of the crimes, the more it would support [his] claim of blackout, psychosis, and intoxication." *Nave v. State,* 757 S.W.2d at 253. Thus, it is clear that the decision to try the counts together and call Sherry Nave to the stand was a conscious, strategic decision.

In declaring this decision to be constitutionally deficient, we believe the district court was tempted by a line of analysis warned of by the Supreme Court. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.... There are countless ways to provide effective assistance in any given case." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. Had counsel's strategy in this case proven effective, the jury might have acquitted Nave of some of the charges because it believed he lacked the intent necessary to commit the crimes. Hindsight now suggests that a different strategy might have been more effective, but this does not mean trial counsel was ineffective. "Generally, an ineffective assistance of counsel claim cannot be based on a decision relating to a reasoned choice of trial strategy, even when proved improvident." *Hayes v. Lockhart,* 766 F.2d 1247, 1251 (8th Cir.), *cert. denied,* 474 U.S. 922, 106 S.Ct. 256, 88 L.Ed.2d 263 (1985); *see also Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight...."). Nave's attorney was not constitutionally deficient for employing a strategy that was unsuccessful or that might not have been adopted by a different attorney.

### b. Failure to Object to Closing Argument

■ Nave's argument centers on the following portion of the prosecutor's penalty phase closing argument:

> I don't necessarily think that the probation is bad or that parole is bad, but there comes a time when probation is expected, when mercy is the rule and when mercy is the order of the day and it's to be expected. Then it's not mercy, it's not mercy any more, it's just plain weakness and it's not a system of justice, it's a system of injustice and it's a fraud, *a system right now where twenty-five years doesn't mean twenty-five years; where life doesn't mean life.*
>
> Now, I'm not going to have a chance to get up and answer Mr. Ossman after he finishes speaking to you. I expect Mr. Ossman is going to try [to] tell you that *in this instance that life without eligibility for probation or parole for fifty years will guarantee you that Emmett Nave never comes out again, but there is no such guarantee.*

(Emphasis added). The Missouri Court of Appeals indicated that this argument was improper under state law, but that the above "brief" remarks, even if objected to, did not constitute reversible error, *Nave v. State,* 757 S.W.2d at 254, and we must accept its statement to that effect. *But see Gilmore v. Armontrout,* 861 F.2d 1061, 1067 n. 12 (8th Cir.1988) (indicating that the above type of argument, although improper in the guilt phase, would not be inappropriate in the penalty phase of a trial). However, assuming defense counsel's failure to object to this argument was objectively unreasonable, we fail to discern any prejudice stemming from this failure. The prosecutor's statements made clear that a life sentence with the possibility of parole in fifty years—the only alternative to the death penalty, Mo.Rev. Stat. § 565.008 (1978)—did not guarantee a life sentence. Though this argument may be impermissible under state law, it was not an inaccurate statement. We also note that the

---

9. As discussed in Part II(A)(2)(c), *infra,* Richard Beeman could not testify as to Nave's condition at the time the crimes were committed.

statements were brief and composed a small part of the prosecutor's closing argument, which differentiates this case from *Newlon v. Armontrout*, 885 F.2d 1328, 1337 (8th Cir. 1989) ("As is apparent in reviewing the transcript of the prosecutor's argument, the argument is filled with improper statements." (footnote omitted)), *cert. denied*, 497 U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990). We conclude that trial counsel's failure to object to these isolated comments did not have an effect on the jury's sentencing determination, so no prejudice resulted from counsel's failure to object.

### c. Failure to Prepare a Defense Witness

According to Nave, Richard Beeman was able to testify that Nave was intoxicated the night before he committed the crimes with which he was charged. Nave contends his attorney was ineffective for failing to interview and properly prepare Richard Beeman prior to calling him to the stand to testify. As a result, when asked about his recollections of the evening of November 18 (the night before the murder), Beeman could not positively say that he saw Nave in an intoxicated state. At the 27.26 hearing, Beeman was asked if he remembered an incident "wherein a woman was killed and [Nave] was charged with taking some hostages." *Nave v. State*, 757 S.W.2d at 252. Beeman responded that he did remember this incident and that he saw Nave in an intoxicated state the evening before the killing. *Id.*

■ "[A] state court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. § 2254(d)." *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2065. However, the findings made by the state court in deciding the claim are subject to the deference required by that statute. *Id.* Thus, we are required to defer to the Missouri Court of Appeals' finding that Nave's trial counsel did not fail to interview Beeman prior to calling him to the stand. *Nave v. State*, 757 S.W.2d at 252. Nave contends the presumption of correctness should not apply because the finding is not supported by the record, *see* 28 U.S.C. § 2254(d)(8) (1988), but his assertion is simply incorrect; there is

ample evidence to support the state court's finding. We also reject Nave's suggestion that his counsel was deficient for failing to rephrase the questions he posed to Beeman and concur in the Missouri court's legal conclusion that "[t]he problem was not trial counsel's question; the problem was Beeman's memory or credibility. Defense counsel cannot be held ineffective merely because different counsel, three years later, was able to formulate a question which elicited the desired response from Beeman." *Nave v. State*, 757 S.W.2d at 252.

■ Finally, even if Nave has satisfied his burden under *Strickland*'s performance prong, he has failed to demonstrate any prejudice stemming from his counsel's deficiency. Evidence was presented that indicated Nave was intoxicated when the crimes were committed, and the jury obviously did not credit this testimony. We do not believe that the jury would have been more likely to credit this testimony if it knew that Nave was intoxicated the night before the crimes were committed. As aptly stated by the state court, "evidence that [Nave] was intoxicated the night before the crime does not mean he was intoxicated the morning of the murder, approximately 11 hours later." *Id.* For these reasons, we conclude Nave has not satisfied either of *Strickland*'s prongs with regard to his attorney's handling of Richard Beeman.

### B. Improper Closing Argument

■ In an argument closely related to the one presented in Part II(A)(2)(b), above, Nave's cross-appeal contends that, independent of his attorney's failure to object, the prosecutor's references to the possibility of parole constitute a separate constitutional violation. We disagree.

Nave relies on *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). In *Caldwell*, the prosecutor told the jury that it would not be responsible for the defendant's execution because the jury's sentencing determination would be reviewed by the state supreme court. *Id.* at 325–26, 105 S.Ct. at 2637–38. The Supreme Court held "that it is constitutionally impermissible to rest a death sentence on a determination

made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." *Id.* at 328–29, 105 S.Ct. at 2639. "*Caldwell* is relevant only to certain types of comment—those that mislead the jury as to its role in the sentencing process in a way that allows the jury to feel less responsible than it should for the sentencing decision." *Darden v. Wainwright*, 477 U.S. 168, 184 n. 15, 106 S.Ct. 2464, 2473 n. 15, 91 L.Ed.2d 144 (1986). The challenged portions of the prosecutor's argument are not the type prohibited by *Caldwell*, so Nave's argument must fail.

## C. Instructional Error

■ The remaining claim presented in Nave's cross-appeal alleges that the instruction on mitigating circumstances [10] violated the Supreme Court's decisions in *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) and *McKoy v. North Carolina*, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) because the instruction indicated the jurors had to unanimously agree that a mitigating circumstance existed. We decline to reach the merits of this argument because Nave is procedurally barred from presenting this claim.[11]

■ Nave failed to raise this issue in his direct appeal, thereby placing this issue in the same situation as the defaulted claims discussed in Part II(A)(1), above. Nave presents the same argument he did with regard to the effect of his motions to recall the mandate. For the reasons expressed in Part II(A)(1)(a) [12] we reject this contention.

■ Nave also contends his trial counsel was ineffective for failing to object to the instruction, thereby creating cause and prejudice excusing the procedural default. We have previously held that counsel's failure to raise a *Mills* challenge to this instruction is not ineffective assistance of counsel. *Grubbs v. Delo*, 948 F.2d 1459, 1471 (8th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 109, 121 L.Ed.2d 67 (1992).

■ In his reply brief, Nave argues for the first time that Missouri's statute requiring mandatory review of capital cases excuses the default. We are normally unwilling to address arguments that are initially raised in reply briefs, *e.g., Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir.1993) (per curiam); however, we exercise our discretion to discuss Nave's argument.

Nave's argument relies on the fact that the Missouri Supreme Court is required to review all cases in which the death penalty is imposed. Mo.Rev.Stat. § 565.014 (1978), *recodified,* Mo.Rev.Stat. § 565.035 (1986). In *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the Supreme Court held that Oklahoma's waiver rule did not apply to federal constitutional claims because Oklahoma courts had previously held that the waiver rule did not apply to "funda-

10. The instruction Nave alleges violates *Mills* reads as follows:

> If you unanimously decide that a sufficient mitigating circumstance or circumstances exist which outweigh the aggravating circumstance or circumstances found by you to exist, then you must return a verdict fixing defendant's punishment at imprisonment for life by the Division of Corrections without eligibility for probation or parole until he has served a minimum of fifty years of his sentence.

11. The state also alleges that Nave's conviction was final before *Mills* and *McKoy* were decided, so application of those cases would violate the non-retroactivity principles enunciated in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion). Nave contends the rule he seeks to apply is not new within the meaning of *Teague* and, even if it is, an exception to the *Teague* bar exists. Other than noting that other circuits have differed on this issue, *compare Williams v. Dixon*, 961 F.2d 448, 459 (4th Cir.) (rules announced in *Mills* and *McKoy* "are bedrock procedural rules falling within the second exception to the *Teague* rule"), *cert. denied,* —— U.S. ——, 113 S.Ct. 510, 121 L.Ed.2d 445 (1992) *with Wilcher v. Hargett*, 978 F.2d 872, 878 (5th Cir.1992) (holding none of the exceptions to the *Teague* bar apply), *cert. denied,* —— U.S. ——, 114 S.Ct. 96, 126 L.Ed.2d 63 (1993), we decline to address this issue.

12. Nave claims he raised this issue in his motion to recall the mandate, which is true. However, as noted in our earlier discussion, this was not the type of claim that could be raised in a motion to recall the mandate. Nave further claims his motion to recall the mandate raised the issue of counsel's ineffectiveness for failing to raise this issue on direct appeal; our review of the motions reveals that this assertion is incorrect.

mental trial error," and constitutional errors were fundamental trial errors. *Id.* at 74–75, 105 S.Ct. at 1091–92. Relying on *Ake*, the Ninth Circuit held that the state court had a statutory obligation to "consider possible errors in sentencing that are not raised by the defendant or were not objected to at his trial," *Beam v. Paskett*, 3 F.3d 1301, 1306 (9th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 163, 128 L.Ed.2d 354 (1995), habeas claims predicated on such arguments could not be procedurally defaulted. *Id.* at 1307.

Nave seeks to apply the Ninth Circuit's reasoning to this case. The flaw in his argument is that the Missouri Supreme Court is not required to review death sentences for instructional or constitutional error. In addition to "any errors enumerated by way of appeal," Mo.Rev.Stat. § 565.035.3 (1986),[13] the Missouri Supreme Court is required to consider only three specific types of claims:

(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;

(2) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance....;

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence and the defendant.

*Id.* § 565.035.3. Clearly, the second and third claims are inapplicable in this case. Nave argues that use of an unconstitutional instruction constitutes an "arbitrary factor," so the supreme court was required to review for this error and he therefore cannot be deemed to have defaulted this claim. We do not read the phrase "arbitrary factor" so broadly. The phrase, in context, is a catchall that is intended to describe possible improper bases for the imposition of the death penalty. This inquiry requires the court to ensure that the aggravating factors relied upon by the jury constitute permissible grounds under state law for imposing the death penalty. *See State v. Kilgore*, 771

S.W.2d 57, 68 (Mo.) (en banc) ("no evidence that the death sentence was imposed under the influence of passion, prejudice, *or other arbitrary factors.*" (emphasis added)), *cert. denied*, 493 U.S. 874, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989); *see also Jones v. State*, 767 S.W.2d 41, 45 (Mo.) (en banc), *cert. denied*, 493 U.S. 874, 110 S.Ct. 207, 107 L.Ed.2d 160 (1989).

The scope of the state court's mandatory review is, ultimately, a question of state law. We do not believe state law requires the Missouri Supreme Court to review death penalty cases *sua sponte* for constitutional or instructional errors that are not specified in the direct appeal. Issues falling outside the limited bases of mandatory review cannot be deemed to have been submitted to the state court, so Nave's claim of instructional error has been procedurally defaulted and is beyond our ability to review.

## III. CONCLUSION

The district court erroneously granted Nave's petition for habeas corpus because seven of the claims were procedurally barred and the remaining three claims lack merit. The district court properly denied relief on Nave's claim that the prosecutor's closing argument was improper. Finally, Nave's arguments about the jury instructions were procedurally barred. Accordingly, we reverse the lower court insofar as it granted the writ and affirm insofar as it denied the writ.

---

**13.** For ease of discussion, the 1986 version of the statute (which is identical to the 1978 version in all important respects) shall be referenced.