# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3671
No. 00-3682

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeals from the United States |
| | * | District Court for the Western |
| Charlotte and Danny Washington, | * | District of Arkansas |
| | * | |
| Appellants. | * | |

_____

Submitted: May 14, 2001
Filed: July 2, 2001

_____

Before McMILLIAN and BOWMAN, Circuit Judges, and BOGUE,[1] District Judge.

_____

BOGUE, District Judge.

Charlotte and Danny Washington appeal from their convictions of five counts of mail fraud under 18 U.S.C. § 1371. In their appeal, the Washingtons argue that an improper <u>Allen</u> charge was given and that neither should have received a vulnerable victim enhancement. Charlotte further argues that she should not have received an

_____

[1]The Honorable Andrew W. Bogue, Senior United States District Judge for the District of South Dakota, sitting by designation.

organizer or leadership role enhancement, that the loss was miscalculated, and that she did not receive the right of allocution. We affirm the district court on all issues except we vacate and remand for re-sentencing based upon the right of allocution.

I.

The supplemental instruction given orally to the jury after they had announced the deadlock on all but one count was as follows:

> Well, even if we recess for the night, this case has been extensive and expensive and I know you all devoted a lot of time to it, but we came back fresh in the morning, I think what you are telling me is, Mr. Thomas, even if we deliberate awhile this evening and then came back even in the morning, that it may not change much.

The foreman agreed and then the judge stated, "I'm going to ask, then, that you retire to the jury room and any verdicts that you agree on, agree on those, and the ones you can't, just tell me and that you're unable to agree, bring those back in. We'll decide where to go from there."

The Washingtons argue that the statement "extensive and expensive" directed the jury to find them guilty. Additionally, they argue that the judge improperly referred to 'verdicts,' rather than 'verdict,' which they claim directed the jury to deliberate further and find them guilty of additional crimes. Neither of these arguments have any merit to them. First, the judge never directed the jury to deliberate any further, the jury chose to do so on their own. Second, the statement of the cost and effort expended on the trial did not reference any particular party and was not inherently coercive. Hodges v. U.S., 408 F.2d 543 (8th Cir. 1969). Third, the pluralizing of the word 'verdict' did not direct the jury to find for either party and simply was made to direct the jury to complete the verdict forms. The judge is free to issue supplemental instructions to the jury so long as the instruction is not impermissibly coercive. Jury coercion is

-2-

determined by (1) the content of the instruction, (2) the length of the deliberation after the instruction, (3) the total length of deliberations, and (4) any indica in the record of coercion. U.S. v. Ramos-Torres, 187 F.3d 909, 912 (8th Cir. 1999).

As demonstrated above, the content of the instruction was not coercive.  The length of deliberation after the instruction was 45 minutes.  The jury had deliberated for over four hours for a four-day trial.  Neither of these facts establish the inference of coercion under U.S. v. Hiland, 909 F.2d 1114, 1137 (8th Cir. 1990).  Lastly, nothing in the record points to the judge coercing the jury in favor of the government as opposed to defendant.

## II.

Sentencing Guideline § 3A1.1 calls for an increase the offense level by two if "(1) the victim was either (a) unusually vulnerable due to age, physical, or mental condition, or (b) otherwise particularly susceptible to the criminal conduct, and (2) the defendant knew or should have known of the vulnerability or susceptibility."  In this case, there was evidence that the Washingtons analyzed the tax rolls to find out-of-state land owners because they would not check up on their land frequently or at all.  The Washingtons then clear cut the land and paid the landowners a small fraction of the lumber's true value.  This scheme was accomplished by Charlotte telephoning each victim and gaining their trust though lengthy and numerous high pressure conversations.  From these conversations, Charlotte easily acquired knowledge of the person's age, infirmities, and vulnerabilities.  While many of the victims were educated individuals, none of them had any dealings in the logging industry.  It was further established that Charlotte discovered and the Washingtons targeted elderly victims who were in desperate need for money.  Based upon these facts, the district court did not err in applying the vulnerable victim enhancement.

III.

Sentencing Guideline § 3B1.1(a) states that a four level enhancement is proper, "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Under U.S. v. Brockman, 183 F.3d 891, 899 (8th Cir. 1999), factors to be considered for an organizer or leader enhancement are the decision-making authority, nature of participation, the recruitment of accomplices, the claimed right to a large share of the fruits of the crime, degree of participation in planning and organizing, the nature and scope of the activity, and the degree of control over others. The Washingtons had at least two other participants and utilized at least 11 logging companies to defraud at least 41 families in 13 states for over $800,000 over three years. A co-conspirator of the Washingtons stated there were "several hundred" victims, but the court limited the case to the 41 victims where the loss could be fully established. As stated by the trial judge, all of these factors fit the Washingtons' scheme to a "T." The "otherwise extensive" provision was easily met. *See* Morphew v. U.S., 909 F.2d 1143, 1145 (8th Cir. 1990) (scheme for $250,000 is "otherwise extensive").

IV.

The Washingtons claim the loss should be calculated by the contract values set forth in their agreements with the victims. This method of calculation is not proper and lacks any prior legal support as the amounts the Washingtons sought to pay were the basis of the fraud in the first instance. The court properly used the true market value of the timber taken to calculate the loss.

V.

At sentencing, every convicted individual has the right to allocution. Fed R. Cr. P. 32(c)(3)(C). Through an over-sight of the trial court, Charlotte was never given this

opportunity to speak on her own behalf. This is clearly error and must be reversed. U.S. v. Patterson, 128 F.3d 1259 (8th Cir. 1997). She has further demanded that another judge sentence her, but she has failed to demonstrate any bias so this condition is without merit.

Accordingly, we affirm the district court on all issues except as to allocution. Therefore, Charlotte Washington's sentence is vacated and the matter is remanded to the district court for a sentencing hearing and sentence.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.