# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3137

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Armando Ybarra, also known as | * | |
| Armando Ybarra Reta, also known as | * | |
| Armando Reta Ybarra, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 9, 2009
Filed: September 8, 2009

_____

Before COLLOTON, JOHN R. GIBSON, and BEAM, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Armando Ybarra appeals his conviction on one count of conspiracy to distribute less than 100 kilograms of marijuana. He argues that the district court's supplemental charge to the jury, based on *Allen v. United States*, 164 U.S. 492, 501 (1896), impermissibly coerced a guilty verdict. We affirm the judgment of the district court.[1]

_____

[1]The Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota.

I.

On June 12, 2007, a grand jury indicted Ybarra on one count of distribution of marijuana and one count of conspiracy to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(D), and 846. Jury selection occurred on March 24, 2008. Just before releasing the prospective jurors for the first lunch recess, the court admonished them not to discuss the case with anyone, and to inform the court if anyone attempted to speak with them about the case. The court stated: "[W]e're taking a lot of time, this is a very expensive proposition, and, so, we do not need outside influences influencing your decision-making process." Moments later, the court again reminded the prospective jurors to avoid outside influences, noting that the "administration of justice is a very serious matter." Jury selection resumed after lunch, and opening statements began that afternoon. Excluding jury selection, the trial lasted two-and-a-half-days, or roughly twenty hours.

The jury retired to deliberate at 3 p.m. on March 27. Before deliberations commenced, the court excused two alternate jurors. The court commented to the jury that the alternates had served as an "insurance policy to make sure that this case could come to a conclusion during this trial." The court also stated, "if we went down to less than 12 jurors, then I would have to – I have a mistrial, which means we'd have to try the case again," and "as you can see, trials are very expensive – calling in jurors, having the witnesses brought in and having the attorneys present in court." The jury deliberated for approximately two hours on March 27 and eight hours on March 28.

On March 31, after a two-day weekend, the jury resumed its deliberations. That morning, the jury sent a question to the court asking, "If we cannot come to a unanimous decision on element #4, of count 6 [charging conspiracy to distribute 100 kilograms or more of marijuana], are we to find the defendant 'not guilty' . . . and then

-2-

move onto the conspiracy of 'less than 100 kilograms'?" One of the jurors also sent the court a letter asking to be replaced because her fiancé had been hospitalized. The court instructed the jury that it was required to reach a unanimous verdict of either "guilty" or "not guilty" on the conspiracy count, and that if it acquitted Ybarra on that count, then it could proceed to consider the lesser-included offense of conspiracy to distribute less than 100 kilograms of marijuana. In addition, given the situation with the juror's fiancé and the expectation of a snowstorm, the court informed the jury that if it did not reach a verdict by 12:30 p.m. that day, then it would resume deliberations at noon on the following day.

The jury failed to reach a verdict on March 31, and reconvened the next day. After nearly two hours of deliberation, the jury submitted another question to the court. The jury asked whether it was obligated to reach unanimous agreement on each count, and what would happen if it could not unanimously agree on both counts. At 2 p.m., over Ybarra's objection, the court instructed the jury in accordance with Eighth Circuit Model Criminal Jury Instruction 10.02, commonly known as an *Allen* charge. *See* Judicial Comm. on Model Jury Instructions for the Eighth Circuit, *Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit* § 10.02, at 495 (2008). The court said:

> There is no reason to think that another trial would be tried in a better way or that a more conscientious, impartial or competent jury would be selected to hear it. Any future jury must be selected in the same manner and from the same source as you. If you should fail to agree on a verdict, the case is left off and must be disposed of at some later time. Please go back now to finish your deliberations in a manner consistent with your good judgment as reasonable persons.

Nearly two-and-a-half hours after this instruction, the jury returned its verdict. The jury acquitted Ybarra of conspiracy to distribute 100 kilograms or more of marijuana, found him guilty of a lesser-included offense of conspiracy to distribute

less than 100 kilograms of marijuana, and remained undecided on the distribution count. In total, the jury deliberated for approximately eighteen hours.

Ybarra filed a motion for judgment of acquittal or, alternatively, a new trial. He argued that the *Allen* charge had the effect of coercing the jury into returning a guilty verdict. The district court denied the motion, concluding that the record did not establish any coercion. On appeal, Ybarra contends that he is entitled to a new trial, because the *Allen* charge violated his rights to due process and trial by jury under the Fifth and Sixth Amendments.

II.

"An *Allen* charge is a supplemental jury instruction that advises deadlocked jurors to reconsider their positions." *United States v. Walrath*, 324 F.3d 966, 970 (8th Cir. 2003) (internal quotation omitted). Supplemental jury instructions are permissible, so long as they are not coercive. *Id.* Our cases provide that in determining whether a particular *Allen* charge had an unduly coercive effect, we consider (1) the content of the instruction, (2) the length of deliberation after the *Allen* charge, (3) the total length of the deliberation, and (4) any indicia in the record of coercion or pressure on the jury. *Id.*; *United States v. Thomas*, 946 F.2d 73, 76 (8th Cir. 1991).

Ybarra first complains that the content of the Eighth Circuit's model *Allen* charge is *per se* coercive, because it incorrectly implies that the only result from a hung jury is a retrial by another jury. This contention is foreclosed by circuit precedent, which has approved the model instruction. *Thomas*, 946 F.2d at 76; *see also United States v. Aldridge*, 413 F.3d 829, 832-33 (8th Cir. 2005) (noting that the model charge "has been accepted by this court as non-coercive in content"); *United States v. Hagan*, 412 F.3d 887, 890 (8th Cir. 2005) ("Model Instruction 10.02 is approved by this court as to content.").

Ybarra argues that even if the instruction is not *per se* objectionable, it nonetheless became unduly coercive under the circumstances of this case. He asserts that the jury deliberated for only two-and-a-half hours after the issuance of the *Allen* charge, and that total deliberations took slightly less time than the entire trial. There is no bright-line rule concerning a requisite amount of post-charge or overall deliberation, *Aldridge*, 413 F.3d at 832, and we cannot say that either period raises an inference of coercion here. We have concluded that a post-charge deliberation lasting two-and-a-half hours does not indicate a coercive effect. *United States v. Johnson*, 411 F.3d 928, 930 (8th Cir. 2005). The overall deliberation in this case – eighteen hours following a twenty-hour trial – is within the range that we have deemed consistent with due process. In *United States v. Glauning*, 211 F.3d 1085, 1087 (8th Cir. 2000), we concluded that sixteen to eighteen hours of deliberation following a two-day trial did not demonstrate that an *Allen* charge was coercive, and in *Hagan*, 412 F.3d at 890, we held that fifteen hours of deliberation after a simple, five-hour trial was not dispositive in the coercion analysis. Likewise, the time periods in this case are not so disproportionate as to raise an inference of undue coercion.

Ybarra acknowledges these authorities, but contends that his situation is distinguishable because there are several other coercive factors present in this case. He points to the court's two statements about the expense of jury trials, arguing that they improperly suggested to the jury that it had to reach a verdict. While a district court should be cautious about references to the cost of trials, we think the court's statements here were, "realistically, of small consequence," and not likely to have been coercive. *Hodges v. United States*, 408 F.2d 543, 554 (8th Cir. 1969) (Blackmun, J.). The first statement – directed at prospective jurors during jury selection – arose in the context of the court's routine instructions not to discuss the case with anyone during the lunch break. The second statement – that "trials are very expensive" – was part of the court's explanation to the jury that alternate jurors serve an important purpose in the trial. Neither of these statements strikes us as inherently coercive, as "[i]t is obvious to a jury that a lawsuit is costly and time consuming," *id.*,

and neither statement mentioned any particular party. *See United States v. Washington*, 255 F.3d 483, 485 (8th Cir. 2001) (concluding that an *Allen* charge with the statement, "this case has been extensive and expensive," was not inherently coercive, because the statement did not single out one side or the other); *United States v. Smith*, 635 F.2d 716, 722 (8th Cir. 1980).

Ybarra also argues that the court improperly described alternate jurors as an "insurance policy" to ensure that the case would come to a conclusion, and incorrectly noted that if a mistrial occurs, "we'd have to try the case again." He asserts that these comments misstate the law, because there are other possible outcomes in the event of a mistrial, including dismissal or a negotiated resolution. While it is technically true that a mistrial would not require a retrial, we do not believe the court's statement had an impermissible effect on the jury. "'If [the jurors] already knew what would likely happen if they deadlocked, it was surplusage; if they did not know, this information, far from being coercive, would have had the effect of reducing the pressure on them to reach a verdict.'" *Hodges*, 408 F.2d at 554 (quoting *Fulwood v. United States*, 369 F.2d 960, 963 (D.C. Cir. 1966) (Burger, J.)). We see no reversible error in these statements.

Citing *dicta* from decisions of this court, which in turn relied on an advisory committee of the American Bar Association, *e.g.*, *United States v. Skillman*, 442 F.2d 542, 558-60 (8th Cir. 1971), Ybarra next contends that the court should have delivered the *Allen* charge as part of its original set of instructions to the jury, rather than after the jury reached deadlock. This preference for including an *Allen* charge in the original instructions, however, is not universally shared, and "we have never held that to be the only permissible method of giving an *Allen* charge." *United States v. Warfield*, 97 F.3d 1014, 1022 (8th Cir. 1996). "In fact, *Allen* itself, like the overwhelming majority of cases we have encountered in which an *Allen* issue has been raised, dealt with the propriety of the instruction after deadlock occurred." *Id.*

Ybarra also asserts that the court erred in delivering the instruction at 2 p.m. instead of the following morning, "thereby putting more pressure on the Jury to 'hurry up' and decide the case before the end of that business day," so it would not have to return the next morning. Ybarra adds that the area had been hit by a snowstorm the day before, one of the jurors had a fiancé in the hospital, some of the jurors lived far away from the courthouse, and the proceedings had already spanned seven business days – all pressures facing the jury. Almost any jury composed of twelve citizens, however, will encounter issues with travel and scheduling, and these factors do not make an *Allen* charge impermissible. We do not perceive a material difference between the circumstances in this case and the inconveniences attendant to jury service generally.

The substance of the *Allen* charge in this case was consistent with instructions approved by this court. The circumstances of the trial are not sufficiently unusual to render the charge impermissible or to raise a strong inference of coercion. After hearing the disputed instruction, the jury acquitted on one count, convicted on another, and remained deadlocked on a third, thus indicating that it was not coerced to resolve all charges against Ybarra or to decide points on which it could not in good faith reach agreement. *See United States v. Wiebold*, 507 F.2d 932, 934 (8th Cir. 1974). We therefore hold that the district court did not violate Ybarra's constitutional rights by issuing the *Allen* charge.

The judgment of the district court is affirmed.

_____