# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-1774

_____

United States of America

*Plaintiff - Appellee*

v.

Dinesh Sethi, also known as Dan Sethi

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: September 21, 2012
Filed: January 8, 2013

_____

Before MELLOY, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Dinesh Sethi appeals his sentence following a guilty plea to one count of wire fraud in a six-count indictment, charging him with wire fraud and conspiracy to

commit wire fraud. He challenges the district court's[1] sentencing enhancements, the court's failure to vary downward, and the court's award of restitution. We affirm.

## I.    BACKGROUND

At the time of his indictment, Sethi was president and owner of DES Staffing Services, a temporary staffing services agency based in Des Moines, Iowa. DES provided human resource and accounting functions for its client employers, such as staffing fulfillment, compensation management, and furnishing workers' compensation insurance for the employees of the DES client employers.

Relevant here, DES obtained workers' compensation coverage on the secondary market through the National Council on Compensation Insurance (NCCI). Because DES fell in a high risk category, it was required to pay higher premiums for its coverage. Between February 2006 and February 2009, in order to reduce the premiums paid by DES for its coverage, Sethi devised and carried out a scheme to defraud the two insurance companies administering the workers' compensation policies DES obtained through NCCI.

Stated generally, because workers' compensation premiums are calculated based upon factors such as total wages to be covered, job classifications, and an employer's past history of work-related injuries, Sethi's scheme involved manipulating these various factors in order to reduce the amount of premiums paid by DES. For example, Sethi had his director of finance shift payroll from high premium job classifications to lower premium job classifications, and, additionally, created shell corporations in order to deflect DES's high "modification factor" ("mod factor")–a rating that reflects an employer's history of work-related injuries, including

---

[1]The Honorable James E. Gritzner, Chief Judge, United States District Court for the Southern District of Iowa.

those involving serious injury or death. The shell corporations, with no claim history whatsoever, would necessarily have a lower mod factor and thus greatly reduced the amount of premiums due on the employees from its payroll.

At sentencing, the district court applied a sophisticated-means enhancement as well as a role-in-the-offense adjustment. Additionally, the court imposed restitution and declined Sethi's request for a downward variance. Sethi challenges each on appeal.

## II. DISCUSSION

### A. Enhancements

We review the application of the Guidelines to the facts de novo and factual findings underlying the calculation of the Guidelines for clear error. United States v. Morse, 613 F.3d 787, 796 (8th Cir. 2010). The ultimate sentence is reviewed for abuse of discretion. Id. The district court committed no error here.

Section 2B1.1(b)(10)(C) of the advisory Guidelines authorizes a two-level sentencing enhancement for the use of "sophisticated means." Application note 8(B) to § 2B1.1(b)(10)(C) defines "sophisticated means" as

> especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

The sophisticated-means enhancement is appropriate when the offense conduct, viewed as a whole, "was notably more intricate than that of the garden-variety [offense]." United States v. Hance, 501 F.3d 900, 909 (8th Cir. 2007). "Even if any single step is not complicated, repetitive and coordinated conduct can amount to a sophisticated scheme." United States v. Fiorito, 640 F.3d 338, 351 (8th Cir. 2011) (quotation omitted), cert. denied, 132 S. Ct. 1713 (2012).

The government established that Sethi utilized sophisticated means to accomplish the fraudulent activities in this case. United States v. Scott, 448 F.3d 1040, 1043 (8th Cir. 2006) ("[U]nder the advisory guidelines scheme, sentencing judges are required to find sentence-enhancing facts only by a preponderance of the evidence."). With little, if any, citation to supporting authority on appeal, Sethi contends that "under the unique circumstances of this case, and based on the characteristics of the staffing industry, his fraud was not sophisticated." He additionally claims that his act of working with the director of finance "to shift payroll was neither complex nor especially intricate." The facts of the case advise otherwise, however. We need not delve too deep to uphold the district court's conclusions here. Sethi not only directed the shifting of payroll to less expensive job classifications in multiple reports over several years, but also created two shell corporations, utilizing names and addresses of unwitting, or at the very least uninvolved, individuals as ostensible "owners." Sethi even assumed the identities of these other individuals by signing documents and answering phone inquiries in their stead. He also recruited an existing franchise owner to take over alleged franchises of DES so as to capitalize on her low mod factor, or injury history factor. Sethi went to great lengths to manipulate the workers' compensation premium calculation factors. The district court did not err in applying the enhancement here.

The district court further did not err in applying the role-in-the-offense adjustment as well. The four-level leadership-role enhancement under § 3B1.1(a) for Sethi's leadership role provides:

Based on the defendant's role in the offense, increase the offense level as follows: (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

In advocating for the imposition of this enhancement, the government relied on the "otherwise extensive" trigger. "A defendant must have at least directed or procured the aid of others for the enhancement to apply." United States v. Bistrup, 449 F.3d 873, 883 (8th Cir. 2006). A scheme may be "otherwise extensive" if it involves a large loss amount and covers a period of years. United States v. Washington, 255 F.3d 483, 486 (8th Cir. 2001).

Sethi argues the court erred in relying upon the same factual findings to support both the sophisticated-means and leadership-role enhancements. He claims the court thus impermissibly "double counted" the conduct, highlighting that "sentencing courts err when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways." United States v. Smith, 516 F.3d 473, 476 (6th Cir. 2008) (internal quotation omitted). "We review de novo whether a district court impermissibly double counted in applying the sentencing guidelines." United States v. Hill, 583 F.3d 1075, 1080 (8th Cir. 2009).

"Double counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." United States v. Hedger, 354 F.3d 792, 793 (8th Cir. 2004) (quotation and internal quotation omitted). "Double counting may be allowed, however, where '(1) the Sentencing Commission intended the result and (2) each statutory section concerns conceptually separate notions relating to sentencing.'" Hill, 583 F.3d at 1080 (quoting Hedger, 354 F.3d at 794)).

Applying the sophisticated-means enhancement on this fraud charge, along with an enhancement based upon Sethi's role in the offense that was "otherwise extensive," concern conceptually separate notions relating to sentencing. Noted earlier, the sophisticated-means enhancement concerns the execution or concealment of an offense–the "how." And, as explained by the Guidelines' application notes, "[i]n accessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive." U.S.S.G. § 3B1.1 cmt. n.3. The leadership-role enhancement, then, is not as concerned with the "how," but rather the "how far" and "who."

It is certainly not axiomatic that the imposition of these two enhancements simultaneously results in double counting. In fact, the Commission contemplated that the two enhancements could apply simultaneously. The Guidelines manual acknowledges that enhancements under Chapter Two and adjustments under Chapter Three "are to be applied cumulatively" even though they "may be triggered by the same conduct." U.S.S.G. § 1B1.1 cmt. n.4(B). Accordingly, that there was overlap in the factual basis supporting each does not end the analysis. Here, the sentencing court was careful to bifurcate these enhancements to ensure that each was uniquely supported by the facts, especially noting the "extreme additional activity with regard to the amount of the loss [and] the number of other people that were used in the process" to support the "otherwise extensive" aspect of the leadership-role enhancement, wholly separate from the "how" of the operation that supported the sophisticated-means enhancement. Accordingly, the court did not err in applying the role-in-the-offense enhancement on these facts.

## B.    Restitution

Sethi next argues that the district court erred in its loss calculation and restitution award.  "We review the loss calculation for clear error, and the restitution award for an abuse of discretion."  United States v. Rice, 699 F.3d 1043, 1049 (8th Cir. 2012).

On appeal, Sethi contends that the district court erred in finding that the two additional franchise companies discussed in the litigation were shell companies, and that Sethi used them to decrease his workers' compensation insurance premiums.  Yet, the government's evidence at sentencing proved the veracity of this claim–that Sethi used these companies to avoid DES's large mod factor by transferring all but DES's clerical employees into them.  This court takes a broad view of what conduct and related loss amounts can be included in calculating a loss,  United States v. DeRosier, 501 F.3d 888, 896 (8th Cir. 2007), and affirms the sentencing court's calculation based upon the evidence adduced.  We find no error here.

## C.    Variance

Sethi finally argues that the court should have considered, and granted, Sethi's motion for a downward variance.  Assuming Sethi properly preserved this matter for appeal, "'[w]e do have authority to review the court's refusal to grant a downward variance for abuse of discretion.'"  United States v. Hammond, 698 F.3d 679, 681 (8th Cir. 2012) (quoting United States v. Brown, 627 F.3d 1068, 1074 (8th Cir. 2010)).

Prior to sentencing, Sethi requested a downward variance and made policy arguments in a supporting memorandum, among other arguments.  On appeal, Sethi claims that the district court did not acknowledge these arguments until *after* the court imposed his sentence, and then only did so when Sethi's defense counsel pointed out the court's failure to explicitly rule on Sethi's pending motion for a downward

variance. At that later time, the district court rejected Sethi's policy-disagreement arguments and denied the pending motion. It is this abbreviated denial that forms the basis of Sethi's claim on appeal. Sethi argues that given the lateness of the district court's ruling, the record is left unclear whether the court was aware of its authority to grant a downward variance on this basis or declined to do so based on its view of the Guidelines or any alleged limitations, which would require a remand. See United States v. Roberson, 517 F.3d 990, 995 (8th Cir. 2008) ("When a district court does not consider an argument because it is unaware of its power to do so . . . a remand is appropriate.").

The record is clear, however, that the district court was fully aware of its ability to grant a downward variance but denied Sethi's request to do so, stating, "[a]ctually for purposes of the record, I think I should both clearly deny the motion for variance, as was obviously inherent in what I had to say, but in addition to that, I think I should also specifically deny the argument you made [in your supporting memorandum] based upon Kimbro [sic] with regard to the calculation of the guidelines based upon the amount of loss." While it is not the normal course for a district court to rule upon a pending motion for a downward variance after it imposes a sentence, the court's failure to do so here was not an abuse of discretion and the resulting sentence was reasonable. The court stated that it had, among other things, listened to counsel's arguments, read the briefs and other materials provided, considered the Guidelines as a starting point, and arrived at a sentence at the bottom of the Guidelines range, which was "sufficient but not greater than necessary to address sentencing considerations in this case." See United States v. Black, 670 F.3d 877, 881 (8th Cir. 2012) ("[N]ot every reasonable argument advanced by a defendant requires a specific rejoinder by the judge." (quotation omitted)). Further, we are left with no doubt that the court was fully apprised of its power to grant such a variance, as is evident from the court's, albeit belated, mindful reference to, and consideration of, Sethi's policy arguments in support of the request.

## III.  CONCLUSION

We affirm the judgment of the district court.

_____