# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-2758

_____

United States of America

*Plaintiff - Appellee*

v.

Lisa Charlene Lamb, also known as Lisa C. Lamb, also known as Lisa C. Odom

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Ft. Smith

_____

Submitted: June 10, 2019
Filed: September 3, 2019
[Unpublished]

_____

Before GRUENDER, ARNOLD, and STRAS, Circuit Judges.

_____

PER CURIAM.

The district court[1] sentenced Lisa Lamb to 18 months in prison after she pleaded guilty to wire fraud, 18 U.S.C. § 1343, for stealing from her employers. We affirm.

Lamb worked as an office manager and bookkeeper for four-and-a-half years. During that time, she stole a total of $184,466.01 from her employers, primarily by writing checks to herself from company bank accounts and then editing QuickBooks entries to make it look like the checks were for legitimate business expenses. She also used a company credit card to pay for personal items. At sentencing, the district court gave a two-level enhancement for using "sophisticated means" to commit the offense, U.S.S.G. § 2B1.1(b)(10)(C), and another two-level enhancement for abusing a position of trust, *id.* § 3B1.3. We review the factual finding that Lamb's scheme was "sophisticated" for clear error, *see United States v. Huston*, 744 F.3d 589, 592 & n.2 (8th Cir. 2014), and the legal conclusion that she occupied a position of trust de novo, *see United States v. Walker*, 818 F.3d 416, 423 (8th Cir. 2016).

The district court did not clearly err when it found that Lamb's scheme was "more intricate than . . . the garden-variety offense." *United States v. Sethi*, 702 F.3d 1076, 1079 (8th Cir. 2013) (brackets and citation omitted). In hiding her theft, Lamb repeatedly made false entries in QuickBooks. *Cf. United States v. Norwood*, 774 F.3d 476, 480 (8th Cir. 2014) (per curiam) (upholding a sophisticated-means enhancement based in part on the steps that the defendant took to avoid detection). And not just once or twice; she carried out over one hundred separate fraudulent transactions spanning four years. "Repetitive and coordinated conduct" like this can amount to "sophisticated means" on its own, even if each individual step in the fraud is not complex. *United States v. Finck*, 407 F.3d 908, 915 (8th Cir. 2005); *see also United States v. Jenkins*, 578 F.3d 745, 748, 752 (8th Cir. 2009) (holding that a defendant who submitted dozens of fraudulent life-insurance applications over a

---

[1]The Honorable P.K. Holmes, III, United States District Judge for the Western District of Arkansas.

three-year period had engaged in "repetitive and coordinated conduct" and deserved a sophisticated-means enhancement (brackets and citation omitted)).

The district court also did not err in concluding that Lamb "abused a position of . . . private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. Lamb managed the companies' accounts, prepared payroll, and sent checks to vendors. While performing these tasks, she had "complete control" over the company checkbooks and credit cards, which she used to redirect funds to her own accounts. *Cf. United States v. Brelsford*, 982 F.2d 269, 272 (8th Cir. 1992) ("The fact that no one looked over [the defendant's] shoulder is itself evidence that she held a position of trust."). The trust she had (and abused) was what enabled her to steal from her employers. *Cf. United States v. Erhart*, 415 F.3d 965, 972 (8th Cir. 2005) (explaining that a chiropractor was able to continue a fraudulent scheme because "the insurance companies trusted" him).

We accordingly affirm the district court's judgment.

_____