# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1131
_____

Alfred Latrell Jackson

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*
_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: January 17, 2020
Filed: April 20, 2020
_____

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.
_____

SMITH, Chief Judge.

Alfred Latrell Jackson was convicted of one count of conspiracy to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846. After we affirmed his conviction on appeal, *United States v. Jackson*, 856 F.3d 1187 (8th Cir. 2017), Jackson moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Specifically, he argued that both of his attorneys, David Treimer and Stephen Swift,

provided ineffective assistance of counsel. The district court[1] denied the motion without holding an evidentiary hearing, and Jackson appeals. We affirm.

## I. *Background*

Beginning in 2012, Iowa City law enforcement noticed an increase in the use of heroin in the area. In July 2014, officers identified Jason Dawson as a local source of heroin and eventually executed a search of his vehicle during a traffic stop. The officer who executed the search discovered a small amount of heroin; $1,097; and two cell phones. Dawson frequently sent text messages to two numbers found on the cell phone. The messages discussed heroin and large amounts of money. The same day, officers searched Dawson's house and found additional evidence of a heroin distribution scheme. Dawson then agreed to cooperate with authorities and identified Jackson as his heroin source.

On May 7, 2015, the officers set up a recorded phone call between Dawson and Jackson, and the two discussed a pending heroin transaction. After the phone call, officers searched Jackson's residence and found further evidence consistent with heroin distribution. This evidence included: a digital scale, plastic baggies, and $4,160 in United States currency—$120 of which was pre-serialized currency that Jackson received from Dawson during a heroin transaction just three days earlier. In addition, officers discovered a cell phone that matched the number to which Dawson frequently sent text messages about heroin transactions. Officers later conducted another search of Jackson's residence and eventually arrested Jackson.

On July 21, 2015, a grand jury charged Jackson with conspiracy to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846. On July 24, 2015, the district court appointed David R. Treimer to represent Jackson. Treimer met with

---

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

Jackson about five times over six months and encouraged Jackson to plead guilty and offer assistance in exchange for a lesser sentence. Jackson then filed an ethical complaint against Treimer. Shortly thereafter, Treimer moved to withdraw as counsel for Jackson because of a break down in their attorney-client relationship. The district court granted the motion and appointed Stephen Swift as Jackson's new counsel.

On April 7, 2016, Jackson's jury trial began, and over the course of a few days, Swift challenged nearly all of the government's witnesses and evidence. Prior to presenting his case, Jackson told the district court he planned to testify in his own defense. But, the next morning, Jackson advised the district court that he had changed his mind and did not want to testify.

Swift planned to call two witnesses: Juanita Jamison, Jackson's mother, and Geneva Hudson. Jamison attended a majority of the trial, but the day that Jamison and Hudson were expected to testify, neither came. Swift explained that he had been in frequent contact with both and spoke to both on the phone the night before but did not subpoena either witness. Swift requested additional time for the two witnesses to appear, but the district court denied the request.

Swift then gave a summary of the two witnesses' expected testimonies. Swift stated that Jamison would have testified that she provided Jackson with the $4,160 to purchase a food truck. In addition, she would have testified about her knowledge of an individual named Yeoman McKenzie. She would have explained that McKenzie was a good friend of Jackson and that McKenzie passed away in December 2014. Swift planned for this testimony to help establish that McKenzie, and not Jackson, used the phone to contact Dawson. Further, Swift explained that Hudson would have testified about her relationship with Dawson and that she would have stated that Dawson asked her to get a phone number from Jackson. Finally, Hudson would have testified as to her general knowledge of McKenzie.

After summarizing the testimony, Swift stated that there was no further evidence to present; the defense rested. The district court gave the jury its final jury instructions, and the jury began deliberating. Jury Instruction No. 22 stated: "Your verdicts, whether not guilty or guilty, must be unanimous." Final Jury Instrs. at 32, *United States v. Jackson*, No. 3:15-cr-00046-SMR (S.D. Iowa Apr. 12, 2016), ECF No. 260. During deliberations, the jury asked the district court a question: "Per your instruction No. 22 as we read it we can[n]ot have a hung jury and must agree on . . . guilty or not guilty. Is this correct or are we misunderstanding this[?]" Jury Question #2 with Answer of the Ct. at 1, *United States v. Jackson*, No. 3:15-cr-00046-SMR (S.D. Iowa Apr. 12, 2016), ECF No. 264. After the district court discussed the appropriate response with the attorneys, the district court answered:

> A jury is "hung" when it is unable to reach a verdict after exhausting all efforts to reach a unanimous verdict. A jury can "hang in part" as to a particular count or as to a particular defendant.
>
> Please return to your deliberations. If you have not concluded your deliberations by 5:00 p.m. today, you will return tomorrow at 8:30 a.m. and will continue deliberating.

*Id.* at 2. Swift agreed with the court's reply. Following additional deliberations, the jury found Jackson guilty of the crime of conspiracy to distribute heroin. At sentencing, the district court determined that Jackson was a career offender and sentenced him to 188 months' imprisonment. Jackson appealed his conviction, but we affirmed. *See Jackson,* 856 F.3d at 1189. Jackson moved to vacate his sentence pursuant to 28 U.S.C. § 2255, arguing that both Treimer and Swift provided him ineffective assistance of counsel. Specifically, Jackson challenged Treimer's pretrial assistance, Swift's failure to have the two witnesses testify, Swift's advice for Jackson not to testify, Swift's failure to challenge the district court's answer to the jury question about a hung jury, and Swift's failure to challenge the district court's determination that Jackson was a career offender.

-4-

The district court denied Jackson's motion without an evidentiary hearing. The district court emphasized the strength of the case against Jackson and his failure to show prejudice from counsels' actions at trial. The district court issued a certificate of appealability, and Jackson now appeals.

## II. *Discussion*

Jackson argues that the district court abused its discretion in denying an evidentiary hearing on his § 2255 claims that Treimer and Swift were ineffective. Jackson is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. § 2255(b). "No hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Sinisterra v. United States*, 600 F.3d 900, 906 (8th Cir. 2010) (quoting *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007)). Therefore, we must consider the merits of Jackson's claims for relief in order to determine whether the district court abused its discretion in denying Jackson an evidentiary hearing. *See id.* "We review *de novo* the district court's rejection of the substantive claims." *Id.*

In order for Jackson to prevail on his ineffective-assistance-of-counsel claims, he must satisfy the two-part test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). First, under *Strickland*, Jackson must show that his "trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence." *Toledo v. United States*, 581 F.3d 678, 680 (8th Cir. 2009) (quoting *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995)). "[T]here is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance and sound trial strategy." *Id.* (internal quotation omitted).

Second, even assuming that Jackson meets the first part of the *Strickland* test, Jackson must still show that counsel's deficient performance prejudiced him. *United*

*States v. Orr*, 636 F.3d 944, 950 (8th Cir. 2011). "Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result would have been different." *Id.* (internal quotations omitted).

### A. *Treimer's Pretrial Representation*

Jackson alleges that Treimer failed to engage in any pretrial investigation, including failing to secure defense witnesses and documentary evidence that could have challenged aspects of the government's case. However, Jackson does not identify any specific witnesses or evidence that Treimer failed to uncover.

Further, our job as a reviewing court "is not to consider the attorney error in isolation, but instead to assess how the error fits into the big picture of what happened at trial." *Holder v. United States*, 721 F.3d 979, 987 (8th Cir. 2013) (cleaned up). Treimer withdrew as counsel over two months before the trial, and Jackson even admitted that he and Swift had planned a sound trial defense strategy. Jackson "has not offered any alternative theory of the case under which he would have been found not guilty based on" Treimer's role in his case. *Id.* at 990.

Because of this, Jackson fails to show that Treimer's representation prejudiced his case. Jackson alleges that an evidentiary hearing might reveal how Treimer was ineffective. An evidentiary hearing would only be helpful if there were evidence to test, but Jackson has neither shown what evidence would be introduced nor how it would demonstrate prejudice caused by Treimer's representation. Therefore, we conclude the district court did not err in denying an evidentiary hearing as to Jackson's claim that Treimer was constitutionally ineffective for failing to conduct adequate pretrial investigations.

B. *Swift's Representation*

1. *Trial Witnesses*

Jackson also argues that Swift failed to conduct an adequate factual investigation and, specifically, asserts that Swift provided ineffective assistance of counsel when he failed to subpoena Jackson's witnesses, Jamison and Hudson. Although strategic choices made after investigation are virtually unchallengeable, choices "resulting from lack of diligence in preparation and investigation are not protected by the presumption in favor of counsel." *Armstrong v. Kemna*, 534 F.3d 857, 864 (8th Cir. 2008) (cleaned up).

For example, in *Armstrong*, the habeas petitioner succeeded because he showed that his counsel fell below the reasonably competent standard. In that case, counsel failed to subpoena witnesses even though counsel was skeptical that the witnesses would even show up because the witnesses would not answer phone calls. *Id.* at 865. Similar to *Armstrong*, Swift did fail to subpoena both witnesses, but unlike *Armstrong*, Swift regularly communicated with both witnesses, and Jamison attended the majority of Jackson's trial. No evidence has shown that counsel had knowledge either witness would not appear.

However, even assuming that Swift's performance was deficient, Jackson fails to show how Swift's failure to have these two witnesses testify prejudiced him. In *Armstrong*, this court had to remand for the district court to determine what testimony the witnesses would have given at trial. *Id.* at 866–68. But, in the current case, Swift explained the testimony that would have been presented by both Jamison and Hudson. Through Jamison and Hudson's testimonies, Jackson hoped to prove that the money found in his house was for a food truck instead of a drug conspiracy and that McKenzie had been using Jackson's phone to make drug deals. Further, Jackson believed the testimonies would show that he only collected drug money to help McKenzie's family after McKenzie's death.

We agree with the district court: "The case against Jackson was formidable." Order at 11, *Jackson v. United States*, No. 4:18-cv-00267-SMR (S.D. Iowa Nov. 14, 2018), ECF No. 5. Dawson and several other witnesses linked Jackson to the drug conspiracy. In addition, phone records and text messages showed contact between Jackson and Dawson many times, and Jackson identified himself in some of these conversations. Officers also found the phones at Jackson's residence during a search of the residence and found Jackson hiding in the closet during the same search. As to McKenzie, the messages from Jackson's phone continued after McKenzie's death in December 2014. And, testimony about the food truck would easily have been rebutted by the government's evidence showing that the money found in Jackson's house was connected to a drug transaction a few days earlier.

The quantity of evidence against Jackson shows that he was not prejudiced by Swift's failure to subpoena the two witnesses. Swift's failure to subpoena the witnesses was not ineffective assistance of counsel because Jackson has failed to show "a reasonable possibility that the outcome of the trial would have been different absent the alleged deficiency of counsel's performance." *United States v. Robinson*, 301 F.3d 923, 925–26 (8th Cir. 2002).

## 2. *Jackson's Failure to Testify*

Next, Jackson alleges that Swift convinced him not to testify and thus provided ineffective assistance. "[W]e consistently have affirmed that a defense counsel's decision not to call a witness is a virtually unchallengeable decision of trial strategy." *Orr*, 636 F.3d at 955 (internal quotations omitted). Jackson certainly knew he could testify because the trial record reveals the district court discussed with Jackson his right to testify or to refuse to testify. To be sure, Swift did discourage Jackson from testifying. He did so, however, based on its enabling of the government to cross-examine Jackson. Jackson told the district court at one point that he planned to testify, showing that Swift did not prevent Jackson from testifying. In fact, Jackson himself later told the district court that he decided not to testify. Accordingly, Swift

did not render ineffective assistance of counsel when he advised Jackson not to testify.

### 3. *Jury Instruction*

Jackson also argues that Swift provided ineffective assistance of counsel when he failed to object to or appeal the district court's answer to a jury question. Specifically, he alleges that the district court improperly issued an irregular *Allen*[2] charge when the jury asked if it could have a hung jury. "An *Allen* charge is a supplemental jury instruction that advises deadlocked jurors to reconsider their positions." *United States v. Ybarra*, 580 F.3d 735, 738 (8th Cir. 2009) (quoting *United States v. Walrath*, 324 F.3d 966, 970 (8th Cir. 2003)). Here, the jury did not express it was deadlocked, and the district court simply explained the definition of a hung jury and asked the jury to keep deliberating. Therefore, the district court's answer was not a standard *Allen* charge.

However, even if the district court's answer were characterized as an *Allen* charge, the district court's answer is allowed as long as it "is not impermissibly coercive." *Walrath*, 324 F.3d at 970 (quoting *United States v. Washington*, 255 F.3d 483, 485 (8th Cir. 2001)). "Jury coercion is determined by (1) the content of the instruction, (2) the length of the deliberation after the instruction, (3) the total length of deliberations, and (4) any indicia in the record of coercion." *Id.* (quoting *Washington*, 255 F.3d at 485–86).

First, unlike a standard *Allen* instruction, the court did not direct the jurors to reconsider their positions. In addition, almost two hours passed between the answer and the jury's guilty verdict, and, in total, the jury deliberated almost all day. *See id.* at 970–71 (finding no coercion where the jury deliberated a total of eight hours and

---

[2]*Allen v. United States*, 164 U.S. 492 (1896).

returned a guilty verdict one hour after the *Allen* charge). Finally, there is no evidence in the record of any coercion.

Therefore, the district court did not err in answering the jury's question. Because the district court did not err in instructing the jury, it was not ineffective for Swift to fail to object. *See Toledo*, 581 F.3d at 681 ("It is not ineffective assistance of counsel to withdraw objections that have no support in the law.").

### 4. *Career Offender*

Finally, Jackson argues that Swift provided ineffective assistance of counsel by failing to object to the district court's designation of Jackson as a career offender. As the district court explained, Jackson twice pleaded guilty to possession with intent to deliver controlled substances, in violation of 720 Ill. Comp. Stat. 570/407(b)(1). This gave him two prior controlled-substance felony convictions. *See* U.S.S.G. § 4B1.2(b); *see also United States v. Jones*, 882 F.3d 1169, 1171 (8th Cir. 2018) (finding that prior Illinois convictions under 720 Ill. Comp. State 570/401 qualify as controlled substance offenses). In addition, he was convicted when he was at least 18 years old of conspiracy to distribute heroin, which is a controlled-substance offense. *See* U.S.S.G. § 4B1.1(a). The district court did not err in sentencing him as a career offender.

Swift simply did not make an objection lacking legal support. This is not ineffective assistance of counsel. *See Toledo*, 581 F.3d at 681. Further, the district court explained that, absent career-offender status, Jackson would have faced a Guidelines range of 168 to 210 months' imprisonment. The district court sentenced Jackson to 188 months' imprisonment. Given this Guidelines range, even if the

district court had erred, the error would have been harmless.[3] Thus, Jackson cannot show prejudice.

## III. *Conclusion*

Because the motions and records conclusively show that Jackson failed to allege a valid ineffective assistance of counsel claim, the district court did not abuse its discretion in denying Jackson's motion without an evidentiary hearing. Accordingly, we affirm the judgment of the district court.

_____

[3]An error is harmless if the district court intended to impose the same sentence based on 18 U.S.C. § 3553(a) regardless of the Guidelines range. *United States v. Sanchez-Martinez*, 633 F.3d 658, 660 (8th Cir. 2011). During sentencing, the district court said it would have applied the same sentence "regardless if [it] had ruled differently on all of the contested issues here, . . . career offender." Sent. Tr. at 30, *United States v. Jackson*, No. 3:15-cr-00046-SMR (S.D. Iowa Oct. 14, 2016), ECF No. 370.